Good morning, and may it please the court. My name is Glenn Feldman. With me here this morning is Malcolm Harris. We represent the Nisqually Indian Tribe, the appellant in this matter. With the court's indulgence, I'm going to address the federal law issues raised in this case, and Mr. Harris will address the supplemental state court issues. You know you only have fifteen minutes total. We understand. I was hoping maybe I could get a little of that time that wasn't used in the preceding case, but it doesn't look like that's going to happen. Let me begin by clarifying one of the issues that was raised in the supplemental briefing that the court asked for, and that has to do with the issue of standing. Let me make it clear, we are not relying on the allegations, don't need to rely on the allegations in the complaint as to injury in fact, in order to establish the Nisqually Nisqually Tribe's cigarette sales at its smoke shop have decreased significantly since the smoke shop at Frank's Landing opened. Ms. Feldman, I have a very different question, and that is that I have a very hard time seeing where in either the 87 or the 94 Frank's Landing legislation there is any indication of congressional intent to create a private right of action for you to charge the Frank's Landing folks or the tribe with violating that legislation. Let me address that, Your Honor. As we've indicated in our supplemental brief, Indian law principles often differ from principles in the non-Indian. I agree with that in many respects, but I don't know of anything that would say they have a right of action. We think that they do, Your Honor. We think our position here is that Section 1362, as interpreted by the Supreme Court in the Moe case That's a jurisdictional statute. And a jurisdictional statute, of course, it gives you the right to sue almost as big as the U.S. has or as big as the U.S. has. But that says nothing about whether there is a right to sue under any particular, for a violation of any particular federal statute. That has to exist somehow in order for the jurisdiction to be meaningful. You have to have jurisdiction over something. You're right, Your Honor. I'm not quarreling with our jurisdiction. I mean, I'm not beyond that. So I'm focusing on whether there's an implied private right of action under either of those pieces of legislation. Not in the sense that the, not in the court versus Ash sense or Cannon sense. Well, I know, I'm unaware of any other sense in which there is a sense. Well, our view is the sense comes from the Moe case. The Moe case is that exception. It establishes the different elements of a private right of action for cases brought by a federally recognized tribe that arise under federal law. Would you point me at where in the case you get that? Yeah. In Moe? In Moe. Yeah. Well, I don't have Moe in front of me, but Moe says Well, maybe you can take a look at it. Well, I think I can do it. That's great. I think I can do it. Moe says that 1362 was, and they go back and look at the legislative history of 1362. And Congress said that 1362 was intended to give tribes access to the federal courts under the same circumstances that the United States would be permitted to Now, Mr. Hellman, maybe I'm just not being very clear. I buy that 100%. You have got access to this court. Okay? Yes. You've got it. But to do what? That's the question. To bring a claim Is to do what? The tribe has, under 1362, the tribe has access to the federal courts to bring a claim that arises under federal law. Let me tell you But the claims do more than arise under federal law in that everybody else who gets a chance to come to our court comes when there's a claim arising under federal law. But not all federal laws can have an action brought. And this one doesn't. Say anything about bringing that action. Let me try it this way. This claim does not arise under the 94 legislation. This claim arises in the intersection of federal common law. Federal common law here is the extent to which under, on a non-statutory basis, an Indian tribe has the right to exercise governmental authority, including the right to tax transactions. Tribal sovereignty, let me say this very clearly, tribal sovereignty is a creature of federal common law. There is no federal statute that says Indian tribes have the right to tax. Indian tribes have the right to regulate hunting and fishing. No federal statute establishes it. What are you saying violates this blob? I'm sorry, Your Honor? What do you say violates this intersection thing? That you're talking about? What violates it? The actions of the Squaxin Island tribe and Frank's Landing have violated, they are exercising powers that they do not have under federal common law as limited by the 94 statute. All I just thought you said that the 94 statute didn't have anything to do with this. No, I didn't say that. I said this is the intersection. It's a combination. I don't get intersections. I mean, you've got to have a right of action, a cause of action, a right to relief under something. Your Honor, let me say this. I hesitate to say this. I've litigated a lot of cases on the vast majority of those cases do not involve questions of tribal sovereignty. It's either the limits of tribal sovereignty or the extent to which tribal sovereignty trumps or is trumped by state sovereignty. All of those cases, all of those critically important federal Indian law cases, all of them arise under federal common law where there is no congressional statute. Tribes are not suing to enforce a federal statute. They're suing on the basis of federal common law. And the concept of how could the concept of finding congressional statute. I haven't done that. So I haven't tried your kind of cases for 30 years. You're the expert. Can you just tell me directly and simply what's the common law that you claim is violated? If it's not the two section, it's not the 1994, it's not the 1987, what common law right do you claim is violated? The law is very clear that Indian tribes have certain common law sovereign rights to exercise government except as limited by federal law. Except as limited by federal law. This case involves that limitation. This case involves an attempted exercise of sovereign authority by the Squaxin tribe which we say is prohibited because of the exercise of limitation by the limitation that Congress has imposed under the 94 Act. It's the intersection of those two things. It's their effort to exercise sovereign common law authority which we say is limited by or extinguished by the 94 Act. The 94 Act doesn't form the basis for this claim. The section of it which says that that tribe can't exercise jurisdiction over Frank's Landing? Is that the part of the 1994 Act that it's intersecting? The language it says and Frank's Landing shall not be subject to the jurisdiction of any federally recognized tribe, yes. Okay. So it is an effort by Squaxin to exercise sovereign authority which we say is limited by Congress's intent in the 94 Act. And if a tribe had to demonstrate some federal statutory basis for every action that a tribe brings to enforce its sovereignty, we'd be out of statute under which these cases where tribes try to establish sovereignty arise. There is no statute. They are the quintessential federal common law claims. And the idea that there has to be some congressional intent for tribes to bring those claims, it's self-contradictory. There is no statute, so there cannot be any congressional intent. And you've got a good bunch of common law cases which suggest such an idea. Yes. Was that a question? Yes. I'm asking because frankly I didn't see it in anything you briefed. I don't really buy it yet. You've told me, but I've never found a private right of action to come from a statute that doesn't give a private right of action. And I don't find it here. And I haven't found a common law case suggesting that your tribe can bring any case it wants on any federal statute in America and bring it. So I'm still having trouble. Your Honor, I'm obviously not making myself clear because I am not saying that this case arises solely under a federal statute. This case arises under the Squaxin's efforts to exercise their federal common law powers, which we say is limited by the 94 Act. It is a combination of those two things. Without their common law powers, no tribe could exercise governmental authority. So again, and we've cited... Could you favor me with what language in the 94 Act you're relying on? Yes. It's the language... It's the section which describes Franks Landing as a self-governing dependent Indian community that is not subject to the jurisdiction of any federally recognized tribe. That's what you say is violated? Yes. Our position is Congress has said that Franks Landing and Squaxin cannot do exactly what it is they've done here, enter into an agreement by which... Do you think the agreement is an exercise of jurisdiction by the tribe over Franks Landing? Absolutely it is, Your Honor. And I don't say that. They say that. Let me just direct the Court's attention to the... It's all done with their consent and with the consent of the State of Washington and the consent of the landowner, who had an allotment there, as I understand it. Yes, even despite those facts. What Congress said is it shall not be subject to the jurisdiction of any federally recognized Indian tribe. It didn't say Franks Landing shall not be subject to the jurisdiction of any federally recognized Indian tribe, except as they may agree or except as may provide them with economic benefits. Congress could have said that, but they didn't say that. Why did they... As you've given me now, favored me with this section, now tell me why you would be opposed to what happened here? Because Congress in the... Our principal argument here is the District Court interpreted this language, finding it that it was clear and unambiguous, and did not need to look at the legislative history of this legislation. And the legislative history makes clear that Congress did not intend to grant Franks Landing these powers. The legislative history, and we include it in our brief, it's a colloquy from... No, no, you're moving ground now. You said it was Squaxin that doesn't have the power. Franks Landing has power. No, neither has the power. Oh, Franks Landing has no power either. Franks Landing is the subject of the 94 legislation. Franks Landing shall not be subject to the jurisdiction of any federally recognized tribe. In this case, the tribe... Which is a benefit to Franks Landing, not to the Nisqually. Correct. There is a partial benefit to both. They're both... This is a business transaction. I don't understand why. You don't have any interest in them at all, except you'd like to sell cigarettes there. But, I mean, you're not their protector. I mean, so Franks Landing is the one with the right not to be subject to the jurisdiction of Nisqually or Squaxin.  Or anybody else. ...and have injured Nisqually by decreasing the sales at our lawful smoke shop on our reservation, we have been injured. And we have a right to bring this action to ask this court to require the defendants to comply with federal law. You want to give your partner a little bit of time? You've only got 52 seconds. Yes. If it pleases the court, I'm Malcolm Harris, also co-counsel for Nisqually. I would, with respect to that last question, Your Honor, I would ask that you look again at the legislative history in which the Congress expressly said that nothing in this legislation was going to confer the status of a tribe or any jurisdiction of any other tribe upon the locale known as Franks Landing. That's the point that counsel was making, I believe. I want to briefly address these state law issues. The first one is the fact that we believe that the state's approval of the addendum to the Squaxin Compact, which is the document that we're talking about here, violated both the letter and the spirit of the state statute which authorized the governor to enter into compacts with the Indian tribes over cigarette sales. That legislation adopted in 2001 was a settlement of a longstanding dispute between the state and the Indian tribes in Washington over who could tax cigarette sales in the areas of Indian reservations and other areas of jurisdiction of the tribe. We understand the history. Get to the point. You don't have much time. And obviously they only approved tribes as being able to do this. They did not approve any entity like Franks Landing or any other thing. As I understand it in this particular matter, only the tribe is doing it. They got it under a lease. Well, but again, the territory of Franks Landing, this enclave called Franks Landing, is not part of a reservation. It's not a piece of land over which any tribe had any kind of jurisdiction with which the state had to deal with in the settlement that was created by the act. Their own representative who did these negotiations, Ms. Cushman, has admitted in her deposition that they were under no compulsion or any duty to grant this approval of the Squaxin addendum and that they just did it gratuitously and gave up millions of dollars in tax revenues for the state of Washington, an act that they did not have to do. And it was not something that was required by the statute. It was purely discretionary. Now, regarding the, we also believe that the execution of the addendum by the state was a violation of the compact that the state had with Nisqually. They had agreed in the Nisqually compact executed in 2001 or 2, I guess 2002, long after the 1994 legislation, they had agreed that they would only allow cigarette sales by Indian tribes within the Nisqually River Basin. And obviously, the Franks Landing area is located within the Nisqually Indian Basin. And that is a wholesale breach of our contract. And we believe that that's another reason that the contract of the addendum to the Squaxin compact should be disregarded and considered alter priorities. Thank you. You've used two minutes over your time. We'll give time to the other party. Okay. May it please the court, Robert Costello, representing Governor Gregoire. I'd like to use a few minutes to touch on the state law claims, reserving the remainder of time for my colleagues. The Nisqually tribe raises two state law claims to challenge the addendum. The first is that the addendum violates state compacting laws because the Squaxin tribe doesn't have the power to tax non-Indians at Franks Landing. The Nisqually tribe claims Squaxin does not independently have this power, that Franks Landing never had the power to tax, and consequently couldn't have conveyed or delegated that power via the intergovernmental agreement. However, Squaxin's compliance with the requirements of state law is not predicated on any delegation of taxing authority from the community to the Squaxin tribe. More to the point, Squaxin's compliance with the requirements of state law is not predicated at all on Squaxin's asserted or any potential asserted claim power over non-Indians at Franks Landing. As detailed in our brief at pages 23 to 30, the Squaxin tribe has adopted and administers a tribal code that satisfies all of the tax collection, remittance, and expenditure requirements of state compacting law, and does so wholly and purely through the regulation of its own members and wholly owned enterprises. The Squaxin compact and the addendum are fully compliant with state law. The second of Nisqually's claims is that the addendum has somehow breached an exclusive sales provision in the Nisqually compact with the state. This claim fails for at least three reasons. First, the compact contains no express statement of territorial exclusivity as required under state law. Secondly, the Nisqually claims that even if there's no express statement, there was an implied agreement between the state and the Nisqually tribe to grant them that sort of an exclusive sales territory. The deposition of Leslie Cushman, the deputy director of the Department of Revenue, however, makes clear that there was no such implied understanding. Ms. Cushman stated in her deposition, quote, the Nisqually asked for an exclusive selling area. We said no to the exclusive selling area. The third of the Nisqually's claims is that regardless of whether there was an intention to create an exclusive selling area, the language of their compact compels that result. They claim that under the language of the compact, only Nisqually retailers can sell cigarettes on any trust or restricted land within the Nisqually River Basin. The argument fails for the simple reason that the Nisqually brief and the arguments advanced therein fail to give the court the full definition of Indian country as contained in their compact. Each time they quote the definition of Indian country, they omit a very important proviso that says, quote, except as otherwise provided by law. As a consequence of this proviso, the Franks Landing allotments are not and never were Indian country within the meaning of the Nisqually compact. The state did not and could not grant territorial exclusivity to the Nisqually tribe. There's been no breach of their compact in that regard. Unless the court has questions, I'll reserve the remainder of time for my colleagues. None. Thank you. Thank you. Good morning, Your Honors. My name is Keith Harper. I represent respondents, Franks Landing Indian community. I will first address the two issues of the private right of action in standing and then turn to the merits questions that were before the district court. On the question of the private right of action, there is no roaming private right of action under federal Indian law. There are specific circumstances by which statutes create a relationship whereby a tribe can then bring an action pursuant thereto. A good example of this is in the Mitchell II case, which involved individual Indians but has been applied across the board in the context of tribes as well. In Mitchell II, the issue was whether or not the United States has breached its trust responsibility such that the individuals could obtain money damages. There was no expressed cause of action, but the court in 1983, the U.S. Supreme Court, read the Mitchell decision as to providing a right of action to enforce the trust responsibility. Those are the kinds of circumstances under federal Indian law where tribes are able to bring and utilize federal common law. Yes, Your Honor. To go to the 1994 Act, your opponent is of the view that the language in the Act has a self-governing independent Indian community that is not subject to the jurisdiction of any federally recognized tribe is violated and is key to this case in terms of a right of action. What is your view of that section and what did Congress have in mind in adopting it? Your Honor, Congress had in mind the protection of the Franks Landing Indian community. They are, in terms of 1987 Act as well. They were the group that was supposed to benefit from that Act. Had the Franks Landing Indian community brought an action to enforce the 1994 Act, that would be a different story. That is not the case here. Here, Nisqually has been, in fact, hurt by the 1994 Act, if I could use that term. They wanted to assert and annex the Franks Landing Indian community into their own. That is what the record indicates. They are saying, though, that Squaxin has exercised jurisdiction over Franks Landing. Is that right? In the first instance, Your Honor, we do not agree with that proposition. We agree with the State that the incidence of the tax falls on the Squaxin wholesaler. Accordingly, there is no relevant jurisdictional inquiry as Squaxin is not asserting taxing jurisdiction in Franks Landing. Second, if one was to The person selling or using his or her land for that purpose is a member of the other tribe. Yes, Your Honor, is a member of the Squaxin Island tribe, precisely. There is no jurisdiction being exercised over the dependent Indian community. Yes, Your Honor. I think in the first instance, we have a situation where the actual tax falls on Squaxin itself. And so, for that reason, the incidence of the tax, there is no authority asserted at Franks Landing in the first instance. Now, if we get past that legal impediment for Nisqually, then we would say that the actual language of the 94 Act in no way is a bar to this kind of an agreement. I'd like to just take a moment just to read the pertinent language in whole because I think what happens oftentimes is Nisqually has parsed out the language in order to try to make an argument. This is what the language actually says. Quote, a self-governing, it describes Franks Landing, as a self-governing dependent Indian community that is not subject to the jurisdiction of any federally recognized tribe. Now, a couple of important points on that. First of all, that they are self-governing. Now, Nisqually says some inappropriate legislative history that this court should not consider, and I can get to that in a moment, because they were by two dissenting congressmen that disagreed with this provision. Obviously, you can't credit dissenting congressmen that oppose a provision as the means for interpreting the provision, but we'll get to those issues in a moment. What this means is that because Franks Landing is self-governing, then no other tribe shall assert jurisdiction. They shall not be subject to jurisdiction. They shall not be obedient to somebody else's exercise of power. That in no way bars Franks Landing from agreeing to an agreement where Squaxin asserts jurisdiction at the landing. Now, we don't think you need to get to that question, because we think that the actual incidence of the tax falls on Squaxin itself, on their wholesalers. But if you were to reach that question, it is clear that this language is in no way a bar. And let's think about the entirety and the structure of the Act. The 87 and 94 Act were written for the benefit of the Franks Landing Indian community. Why? So that they could economically develop, they could benefit their school, the Wahilu Indian School, that educates children from all around the South Sound region. This Act was for the benefit of that community, and one of the principal benefits is so that they could economically be self-sufficient, as is all federal Indian law has that underlying purpose. In no way, then, because the Act does not say that this is a bar, what it says is that in the first instance, Nisqually cannot assert jurisdiction over the tribe. And again, we have to read this Act in the factual context in which it was arisen. The record indicates conclusively that prior to Congress passing this Act, this Act was a response. It was a response to the Nisqually tribe forcefully attempting to annex Franks Landing into its lands by changing its constitution. In response, Congress said no. Congress has plenary power. They said Franks Landing is indeed self-governing. With respect to the, oh, and if I could just bring up one other issue with respect to the right of action, I want to turn the Court's attention to the actual brief of the Nisqually tribe. Because now that this issue of whether or not they have a private right of action has emerged, we're hearing a lot of talk about common law and Moe in 1362 and all of this. What they said the question presented in this action was, and this is on page 2, does federal legislation enacted by Congress in 1987 and 1994 prohibit the contractual arrangement from the Franks Landing Indian community and the Squaxin Island tribe, under which Squaxin is selling and taxing cigarettes sales at Franks Landing? That's their question presented. And their question presented has no indication of anything that emerging out of common law or that this is somehow a common law violation. With respect to standing, we will rest on our briefs except for one notation, Your Honors. The Nisqually tribe raises the issue of the TM declaration, and that does not allow them to escape the fact that they don't have standing. Here's what Ms. TM, who was a 30B6 witness, a 30B6 witness, testified in deposition. She was a CFO for the Nisqually tribe, and she testified that Nisqually's sales increased by $1.3 million on a year-to-year comparison. She also in deposition said the more pertinent comparison is annual-to-annual because there was too much variance on a monthly comparative basis. So that was her deposition testimony. In a later filed affidavit, she attempted to contradict part of that by putting in place this notion of the monthly comparisons, which she already said was not a useful way of looking at it. I turn the Court's attention to the Foster case, 772 F. 2nd, 1453. And I'll quote, if a party has been examined at length in deposition and could raise an issue of facts simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact. That is precisely what's going on here. This is an attempt to make an issue of fact that does not exist. What the record indicates, the credible record, is that Ms. TM testified under 30B6 that there was no injury because their sales actually went up. Turning to the other question, the Squalic tribe raises two issues with respect to the Franks Landing Indian community. The first is that Franks Landing somehow has no personality to bring, to enter into a contractual arrangement. We find that a rather odd argument because the 1994 Act and the 1987 Act both specifically and expressly allow the Franks Landing Indian community to enter into a particular kind of contract, self-governance contract. But Ms. Squalic never explains how you can have legal personality to enter into one kind of contract, but not legal personality to enter into other kinds of contract. It just doesn't follow. And indeed, that is why the Department of Interior dispositively approved the very contractual arrangements in question here. They do say that you're a very small community and have very little to show in terms of community size. Your Honor, I would like to address that question because I practice exclusively in federal Indian law. There are numerous tribes that are very small. There are a number of tribes that are landless, whose members do not live in the community. Franks Landing has approximately 50 members in it. Only a couple live on the community. Obviously, for the tribes who are landless, none of their individuals live on their reservation. Franks Landing doesn't have any land, does it? Well, Franks Landing does not have land per se, as far as ownership of land. But they have control over 19 acres, governing control. There's a difference, of course, between ownership and then who has sovereign authority over that territory. They have governing control over that land. You say it's not significant that they just have two or three people living there who are members of the community? No, Your Honor, I think, again, there are many tribes that have zero members that live on their trust land. Other places, but still a member of the tribe. Precisely. I live in Bethesda, Maryland. I'm a member of the Cherokee Nation of Oklahoma. We have 200,000 members, although the vast majority do not live on tribal trust land. There are many rancherias, for example, in California, which have nobody who lives on the land with only a few members. You answered my question. Thank you. The court below appropriately in interpreting the word self-governing did not look at legislative history that was problematic. Instead, it looked at the dictionary. And the dictionary says what self-governing is, which is having control over itself. And the court cited another phrase, ultimate power to determine the policies and control activities. The term self-governing speaks for itself. Frank's Landing is a self-governing dependent Indian community. Those two phrases have important legal significance in the area of Indian law. Nothing in the legislative history should be considered for a number of reasons. First, that legislative history is contrary to the actual express and clear statutory language. And the statutory language must be credited in such an event. Secondly, the legislative history was a colloquy between two members, Representative Richardson and Representative Thomas, both of whom opposed the provision including in this act. I see that I have run out of time. Unless the panel has any further questions, I will rest on the briefs. Thank you. Thank you, Your Honors. I'll give you one minute, sir. This is a pretty important question. Either one of you can use it. I don't care. Thank you, Your Honor. I appreciate that. With respect to the merits, and we didn't get much of a chance to talk about the merits, I would ask the court to do just one thing. The district court and the defendants in the case say that this statute that I've quoted to you and we've talked about is clear on its face, that it's meaning it could only have one conceivable meaning. Don't ask me what it means. I would ask you to look at what the defendants thought this meant. And let me direct you to the intergovernmental agreement. This is the agreement between Squaxin and Nisqually under which they create this authority to sell cigarettes and tax them. It's excerpt of record. It's at page 189. All right. I've got it. Go to page 190. I'm not asking you to do this now, but page 190. I've got it here at 190. Page 190. Look at the last whereas clause in this agreement that was entered into in December of 2007. And what they say there is even though Congress has said that Franklin shall not be subject to the jurisdiction of any federally recognized tribe, and they quote that, they say by this agreement we are affirmatively waiving that provision. That's their language, not mine. We are affirmatively waiving this provision of federal law in order to subject Frank's Landing to the jurisdiction of the Squaxin Island tribe. So you have today they say it's clear on its face and it clearly authorized this. When they were entering into this agreement, they said they had to affirmatively waive these provisions in order to do what they did, which includes subjecting Frank's Landing to the jurisdiction of the Squaxin Island tribe. We submit to you that it is not clear on its face and that they understood in 2007 that it was not clear on its face. Thank you. Thank you. I gave you a little more time than that. Thank you. That was rebuttal. Thank you very much. The case 09-35725 is hereby submitted, and our court is adjourned for today. Thank you very much for your arguments. All rise.
judges: Hart, Rymer, Smith N. R.